```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

DEANNE P. CASTLE,

                          Plaintiff,      **No. 1:15-cv-00113(MAT)**
                                                      **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                          Defendant.

## INTRODUCTION

Represented by counsel, DeAnne P. Castle ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff protectively filed an application for SSI on May 26, 2011 (T.68, 138-43),[2] and for DIB on June 7, 2011 (T.69, 134-37),

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Citations to "T." in parentheses refer to pages from the transcript of the certified administrative record.

alleging a disability onset date of January 1, 2007. Her claim was initially denied on September 20, 2011. (T.76-81). On October 24, 2011, Plaintiff filed a written request for a hearing, which was conducted on February 27, 2013, by administrative law judge David S. Lewandowski ("the ALJ") in Buffalo, New York. Plaintiff appeared with her attorney and testified. (T.34-56, 57). Impartial vocational expert Jennifer Dizon ("the VE") also testified. (T.57-66). At the hearing, Plaintiff's attorney amended the alleged onset date to March 31, 2008, the date late insured. (T.33). On April 29, 2013, the ALJ issued an unfavorable decision. (T.9-28). Plaintiff filed a request for review of the ALJ's decision with the Appeals Council on June 28, 2013. (T.5-7). On December 9, 2014, the Appeals Council denied her request for review, making the ALJ's decision the final determination of the Commissioner. (T.1-4). Plaintiff timely commenced this action on February 9, 2015.

Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions.

For the reasons discussed below, the Commissioner's decision is reversed.

**THE ALJ'S DECISION**

The ALJ followed the five-step sequential evaluation established by the Commissioner for adjudicating disability claims. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2007, her alleged onset date. (T.13). At step two, the ALJ found that Plaintiff has the following "severe" impairments: degenerative disc disease of the lumbar spine and bursitis of the right knee. (T.13-16). At step three, the ALJ determined that these impairments, considered singly or in combination with Plaintiff's other non-severe impairments, do not meet or medically equal the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (T.16).

The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to perform light work except that she can only occasionally climb stairs, balance, and stoop; cannot kneel, crouch, or crawl; cannot climb ladders, ropes, or scaffolds; requires a cane to ambulate and for balance; requires the option to sit or stand every 15 minutes; and should avoid working near hazards such as unprotected heights or dangerous machinery. (T.16-21).

At step four, the ALJ determined that Plaintiff has past relevant work as a waitress (Dictionary of Occupational Titles ("DOT") #311.477-030) or automobile salesperson (DOT #273.353-010).

(T.21). However, based on her RFC, age, education, and vocational profile, she cannot perform any of her past relevant work.

At step five, the ALJ relied on the VE's testimony to conclude that a person of Plaintiff's age and with her RFC, education, and work experience, can perform the following jobs that exist in the national economy in significant numbers: cashier (convenience store) (DOT #211.462-014, light, semiskilled; 3,314,870 such jobs available in the national economy, and 530 in the regional economy); counter clerk (DOT #249.366-010, light, unskilled; 420,070 positions available nationally, and 1,190 regionally); animal shelter clerk (DOT #249.367-010, light, semiskilled; 2,828,140 positions available nationally, and 9,340 regionally); telephone operator (DOT #235.662-022, sedentary, semiskilled; 132,680 positions available nationally, 530 available regionally). (T.22-23). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Act during the relevant time period. (T.23).

**SCOPE OF REVIEW**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court

must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

**I. RFC Unsupported by Substantial Evidence**

Plaintiff argues that the ALJ failed to develop the record because he did not obtain an opinion from a treating medical source regarding Plaintiff's physical limitations. (See Pl's Mem. at 9-13). Plaintiff contends that since the ALJ did not adopt in full the opinion of consultative physician Dr. Samuel Balderman, who was the only medical expert to provide an RFC assessment, the RFC was not supported by substantial evidence.

Dr. Balderman examined Plaintiff on August 23, 2011. (T.238-41). As far as clinical findings, Dr. Balderman noted that Plaintiff had right knee flexion to 140 degrees, and unlimited range of motion in the lumbar spine. (T.239, 240). An X-ray of the

right knee that day showed soft tissue calcifications posteromedially. (T.241). Dr. Balderman diagnosed Plaintiff with right knee pain. For his medical source statement, Dr. Balderman opined that Plaintiff has "minimal" limitations in walking, kneeling, and climbing, and that her prognosis was "stable." (T.240). According to Plaintiff, "a person with minimal limitations in just walking, kneeling, and climbing and no limitations in lifting could perform heavy or even very heavy work." (Pl's Reply at 4). Plaintiff asserts that the ALJ "effectively reject[ed]" Dr. Balderman's opinion by formulating a more restrictive RFC. (See Pl's Mem. at 11-13). Therefore, Plaintiff reasons, the ALJ's detailed RFC assessment is not based on any medical expert opinion and is the result of the ALJ improperly "playing doctor." Plaintiff contends that the ALJ had an obligation to develop the record by soliciting a physical RFC assessment from one of her treating sources.

As an initial matter, the Court notes that Plaintiff has not identified any "gaps" in the record apart from an absence of a treating source opinion. Where, as here, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999); see also Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996) (ALJ need not obtain

information from treating physician where ALJ already had a complete medical history and the evidence received from treating physicians was adequate to determine disability). "The question is whether the administrative record, even lacking the opinion of a treating physician, is 'robust enough to enable a meaningful assessment of the particular conditions on which the [plaintiff] claims disability.'" Weed Covey v. Colvin, 96 F. Supp.3d 14, 29 (W.D.N.Y. 2015) (quoting Sanchez v. Colvin, No. 13-CV-6303, 2015 WL 736102, at *7 (S.D.N.Y. Feb. 20, 2015)). In this case, the Court finds that the ALJ was not remiss with regard to his duty to develop the record by requesting an opinion from one of Plaintiff's treating sources. The report of consultative examiner Dr. Balderman was not inconsistent with the relatively benign clinical findings and assessments by Plaintiff's treating physicians. The record as a whole was "adequate to permit an informed finding by the ALJ" as to disability. Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29 (2d Cir. 2013) (unpublished opn.).

Moreover, Plaintiff's argument depends on an assumption that a treating source would have provided a more restrictive RFC assessment than that provided by Dr. Balderman. Given the clinical findings and diagnostic testing results, this was by no means likely. As the ALJ noted, Dr. Balderman's opinion was consistent with "the mild abnormalities noted in the . . . diagnostic evidence and clinical findings of treating sources," (T.21), such as an

absence of joint pain or spinal tenderness, no sensory deficits, normal motor strength, and x-rays showing disc bulge and mild facet arthropathy. (T.19). Thus, because Dr. Balderman's opinion was "not inconsistent with the relatively benign clinical findings and assessments by Plaintiff's treating physicians," it is "doubtful that a medical source statement from any of these providers would have altered the ALJ's assessment of Plaintiff's RFC." Hogan v. Colvin, No. 12-CV-1093, 2015 WL 667906, at *6 (W.D.N.Y. Feb. 17, 2015). Accordingly, "[r]emand is not required based on the ALJ's failure to request a medical source statement from one of Plaintiff's treating physicians." Id.

Finally, the fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (unpublished opn.) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (citing Richardson v. Perales, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")).

**II. Step Five Finding Unsupported by Substantial Evidence**

Plaintiff argues that the ALJ erred at step five of the sequential evaluation by relying upon the VE's testimony that there are three light exertion jobs and one sedentary job that a hypothetical individual with Plaintiff's RFC and vocational characteristics could perform. (T.22-23, 60-63). Plaintiff challenges each of the three light exertion jobs: cashier (convenience store), counter clerk, and animal shelter clerk for various reasons.

First, she argues that the cashier job requires occasional kneeling and crouching, whereas the RFC formulated by the ALJ precluded any kneeling or crouching. The Commissioner has not countered this argument, and the Court agrees that this testimony by the VE cannot provide substantial evidence to support the ALJ's decision.

Second, Plaintiff notes that under the DOT, video counter clerk is an unskilled job with an SVP of 2. At the hearing, the ALJ asked the VE, "If the transferable skills from an auto sales is customer service, how do those transfer to an unskilled job?" (T.61). The VE responded, "Well, I guess, in terms of the job itself and the counter clerk, an individual would be using the customer service skills, interacting with people, and assisting customers with their products. If there's damage to the property, well, they would have that interaction, which would be similar to the car sales." (T.61-62). It is unclear to the Court what the VE

meant in the foregoing statements, or how property damage is relevant to a video counter clerk's duties, or how either of these things relate to car sales. When questioned by the ALJ as to whether she was disagreeing with the DOT, the VE again gave her own unsupported opinion that she "think[s][,] depending on the employer[,] at times it could be more of a semi skilled position. Especially [sic] you're working with computers and you would need more skill in that position." (T.62). This statement is wholly irrelevant to Plaintiff's case because the VE did not testify that "computer skills" were among the allegedly transferable skills Plaintiff had acquired in her job as an automobile salesperson. Defendant does not address this argument by Plaintiff or the blatant discrepancies between the VE's testimony and the DOT. The Court agrees the VE's testimony is unfounded, and cannot provide substantial evidence to support the ALJ's decision. Indeed, in <u>Hulbert v. Comm'r of Soc. Sec.</u>, No. 6:06-CV-1099 LEK/GJD, 2009 WL 2823739 (N.D.N.Y. Aug. 31, 2009), the Commissioner "concede[d] that a claimant cannot transfer skills to unskilled work such as those positions and that the ALJ erred in finding that those jobs constituted other work that [the claimant] could perform." <u>Id.</u> at *19.

Defendant argues that any of the foregoing errors are harmless because the VE identified two other positions, animal shelter clerk and telephone operator, that Plaintiff can perform. Defendant is

correct that to meet her step five burden, "[t]he Commissioner need show only one job existing in the national economy that [Plaintiff] can perform." Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (unpublished opn.) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)). Plaintiff counters that a finding of disability is directed by Medical Vocational Guideline ("Grid Rule") 202.06, 20 C.F.R. Pt. 404, Subpt. P, App. 2 at § 202.06, because she does not have any transferable skills.

Grid Rule 202.06 "requires that a claimant of advanced age who is at least a high school graduate, who previously held a skilled or semi-skilled job that [s]he can no longer perform but who has the residual functional capacity to perform light work, is not to be found disabled if [s]he has job skills that are transferable but must be found disabled if [s]he does not." Draegert v. Barnhart, 311 F.3d 468, 473 (2d Cir. 2002) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 at §§ 202.06, 202.07. Certain Grid Rules, including Rule 202.06, "presume a person to be disabled if [s]he is of advanced age, has severe medical impairments precluding [her] return to [her] prior work, and has limited or no education, unless [s]he has 'a particularly transferable skill, or "vocational asset."'" Id. (quoting Weaver v. Sec'y of Health and Human Servs., 722 F.2d 310, 312 (6th Cir. 1983)). "The rationale for that presumption is that a person of advanced age has little time to learn a new skill and apply it to a new job, especially if [her]

-11-

ability to work has been limited by a medical disability." Draegert, 311 F.3d at 475. It is undisputed that Plaintiff meets the following factors in Grid Rule 202.06: her current RFC assessment is light work with some nonexertional limitations; she is of "advanced age" (58 years-old) on the SSI application date of May 26, 2011; she cannot perform her past relevant work; and she has a high school education plus a couple years of college, but she did not obtain a degree. The only factor from Grid Rule 202.06 in dispute is the existence of transferable skills. Thus, whether the jobs of animal shelter clerk and telephone operator may serve as "other work" Plaintiff can perform depends on whether Plaintiff has transferable skills from her previous relevant work of automobile salesperson. See Grid Rule 202.06, 20 C.F.R. Pt. 404, Subpt. P, App. 2 at § 202.06.

At the hearing, the VE identified the following as Plaintiff's "transferable skills": reading, writing, "customer service skills" and "communicating with customers[,]" (T.59), but then confusingly referred to this grouping of four items as "both skills," without additional specification. (T.60). The ALJ did not request any clarification on this point. The VE then testified that "both skills would be transferable" to the positions of telephone operator (DOT #235.162-022, SVP 3, semi-skilled, sedentary) and

animal shelter clerk (DOT #249.367-010, SVP 3, semi-skilled, light). (See T.60-61, 63).[3]

The Second Circuit has concluded that there is an inherent difference between aptitudes and skills. While "an aptitude is an innate ability," "a skill is a learned ability." Draegert, 311 F.3d at 475 (quotation omitted; citing Ellington v. Sec'y of Health and Human Servs., 738 F.2d 159, 159-61 (6th Cir. 1984) (ability to exercise "independent judgment" and "responsibility for a work product" were "too vague" to be "transferable skills")). Social Security Ruling ("SSR") 82-41, TITLES II AND XVI: WORK SKILLS AND THEIR TRANSFERABILITY AS INTENDED BY THE EXPANDED VOCATIONAL FACTORS REGULATIONS EFFECTIVE FEBRUARY 26, 1979, 1982 WL 31389 (S.S.A. 1982) explains that "[sk]ills refer to experience and demonstrated proficiency with work activities in particular tasks or jobs." Thus, when "evaluating the skill level of [past relevant work] or potential occupations, work activities are the determining factors . . . ." 1982 WL 31389, at *3. In other words, "[i]t is the acquired capacity to perform the work activities with facility (rather than the traits themselves) that gives rise to potentially transferable skills." Id. SSR 82-41 further states that

---

[3] The VE also testified that such "skills" would be transferable to the positions of cashier (DOT #211.462-014, SVP 3, semi-skilled, light) and video counter clerk (DOT #249.366-010, SVP 2, unskilled, light). However, the Court has already found that substantial evidence does not support the conclusion that these positions are "other work" that Plaintiff can perform.

-13-

> [a] skill is knowledge of a work activity which requires
> the exercise of significant judgment that goes beyond the
> carrying out of simple job duties and is acquired through
> performance of an occupation which is above the unskilled
> level (requires more than 30 days to learn). It is
> practical and familiar knowledge of the principles and
> processes of an art, science or trade, combined with the
> ability to apply them in practice in a proper and
> approved manner . . . . A skill gives a person a special
> advantage over unskilled workers in the labor market.

1982 WL 31389, at *2.

The Draegert panel rejected the district court's finding that the claimant's ability to learn and apply rules and procedures, which are sometimes hard to understand; the ability to use reason and judgment in dealing with all kinds of people; the ability to think clearly and react quickly in an emergency; the ability to keep physically fit; the ability to make conclusions based on facts and on one's personal judgment; and the ability to change easily and frequently from one activity to another were not transferable skills. The Second Circuit explained that

> [t]hese abilities, when not linked to any particular
> tasks, are merely traits or aptitudes, not job skills,
> for "[w]orker traits[,] to be relevant[,] must have been
> used in connection with a work activity," SSR 82-41, at
> *3; and neither the VE, nor the ALJ, who relied on the
> VE's testimony in finding that Draegert had transferable
> "skills," gave any explanation as to how these abilities
> and aptitudes had been used in connection with Draegert's
> prior work or had been refined by occupational experience
> into an acquired work skill.

Draegert, 311 F.3d at 476 (some brackets in original).

As Plaintiff argues, "reading and writing" are not transferrable skills, but rather are educational factors, which is

-14-

self-evident from the ALJ's step four finding that Plaintiff has a high school education. Furthermore, "communicating with customers" would seem to fall under the educational factor of having the ability to communicate in English. (T.22). Even if "communicating with customers" is considered as a potential skill, the VE offered no explanation as to how it is distinguishable from "customer service skills." Common sense instead suggests that the ability to communicate with customers is but one kind of customer service "skill." Here, there was no testimony from the VE explaining what was included among Plaintiff's "customer service skills," apart from possibly the ability to communicate with customers. More importantly, it is unclear from the VE's testimony or the record in general what there is about "customer service skills" or "communicating with customers" that requires more than thirty days to learn and gives Plaintiff a special advantage over other job applicants. In sum, "customer service skills" is simply too vague a term, given that it was unaccompanied by a discussion of the specific skills acquired at Plaintiff's past job in automobile sales and how such skills apply to performance of the job of animal shelter clerk. See, e.g., Woods v. Colvin, 218 F. Supp.3d 204, 211 (W.D.N.Y. 2016) (vocational expert testified that claimant had acquired "data skills" and "supervisory skills," and ALJ listed these in his decision as the two transferable skills that claimant had acquired in his past relevant work; district court found "these

terms . . . too vague to constitute 'transferable skills" for the purpose of determining disability" because "[n]either the VE nor the ALJ made any effort to link these 'skills' to any actual work activity that [the claimant] performed when he was the supervisor of operations at a power plant" and there was "not substantial evidence in the record that 'data skills' and 'supervisory skills' are indeed 'skills' that [the claimant] acquired through the performance of past work activities").

Indeed, the VE's testimony undercuts the notion that the car sales position is not industry-specific when she indicated that "an individual would be selling more used automobiles, they would be able to demonstrate how to operate a car on the road, . . . discuss with the customer all of the bells and whistles on each vehicle, the price, if they're able to trade in the car and indeed, the monthly fee." (T.58). The VE testified that an animal shelter clerk "perform[s] some clerical duties[,]" including "meeting with someone to decide what the person's needs are, what kind of animal they're looking at, what's available, helping . . . them fill out paperwork." (T.63). Defendant suggests that being an animal shelter clerk is no different than being a used automobile salesperson because in both positions, the person is "selling" an item to a customer; in one case, the item "sold" is a displaced animal, in the other, it is a car. Even assuming that this is a valid comparison, a proposition this Court finds dubious, it is not one

the VE or the ALJ attempted to make. Rather, the VE's testimony gave the ALJ no basis for the determination Plaintiff has an aptitude that took her more than thirty days to learn and that will give her a "special advantage" over other job candidates applying for a position as an animal shelter clerk. Even though the VE in this case may have thought Plaintiff possessed transferable skills as defined in the Regulations and SSR 82-41, the ALJ could not have independently made that determination without additional development of the VE's definition of "customer service skills" and how such skills would transfer to the jobs listed by the VE.

For substantially the same reasons, the Court concludes that there is not substantial evidence to support the ALJ's finding that Plaintiff's "customer service skills" are "transferable" to the sedentary position of telephone/switchboard operator that the VE testified is semi-skilled "other work" that Plaintiff can perform. Furthermore, as Plaintiff argues, it is open to debate whether the VE is correct that telephone/switchboard operator is still a semi-skilled position, given the advent of computers and computer software. In Young v. Colvin, 15-cv-344-FPG, 2016 WL 5661723 (W.D.N.Y. Sept. 30, 2016), vocational expert Peter Manzi ("VE Manzi") testified at the claimant's hearing on November 14, 2013—about 9 months following Plaintiff's hearing in this case—that the job of switchboard operator is now performed as unskilled. Id. at *6 (citation to transcript omitted). The district court in

Young noted that VE Manzi "indicated that the DOT definition of switchboard operator, which was last updated in 1987, categorizes the job as 'semiskilled' because it used to require 'taking all incoming calls, routing them to proper extension, and taking messages.'" However, at the hearing in Young, VE Manzi explained that "the switchboard operator position is now considered 'unskilled' work because 'modern phone systems do not require all those functions now.'" Id. (citations to transcript omitted). As discussed above in connection with the counter clerk position, unskilled jobs are not "other work" available to Plaintiff, given her age, education, vocational profile and RFC. In such case, Medical-Vocational Guideline 202.06 would take precedent and would direct a finding of disability.

In sum, the record in the present case does not permit the conclusion that the Commissioner carried her burden of showing that Plaintiff possessed vocational skills that were transferable to other work in the economy. Draegert, 311 F.3d at 477. Accordingly, Grid Rule 202.06, 20 C.F.R. Pt. 404, Subpt. P, App. 2, requires a finding that Plaintiff was under a disability within the meaning of the Act. Id. (reversing Commissioner's decision and remanding for payment of benefits).

**III. Remedy**

"Reversal and remand to the Commissioner for further proceedings is the usual remedy where an administrative record is

incomplete or where an ALJ has applied an improper legal standard." McClain v. Barnhart, 299 F. Supp.2d 309, 328–29 (S.D.N.Y. 2004) (citing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)). However, where the claimant has presented substantial evidence of disability and the Commissioner, after full development of the record, has failed to carry her evidentiary burden to show otherwise, the Court may remand solely for the calculation of benefits. Id. (collecting cases). In Draegert, a procedurally and substantively similar case, the Second Circuit reversed and remanded for the calculation of benefits based on an erroneous application of the Grid Rules at step five.

"[T]he Second Circuit has recognized delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability." McClain, 299 F. Supp.2d at 330 (citing, inter alia, Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 644 (2d Cir. 1983) (stating that a remand for calculation of benefits is particularly appropriate because claimant filed his claim four years ago and a remand would further delay payment)). Given the completeness of the record here, and the substantial time that has passed since Plaintiff filed her claim (over six years), the Court elects to reverse and remand for the calculation of SSI benefits.[4]

---

[4]
Plaintiff has indicated that she "concedes the Title II claim" for DIB given the minimal medical evidence on or before the date last insured March 31, 2008. (Pl's Reply at 7 n. 4). Plaintiff instead focuses on the Title XVI claim

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision contains legal errors and is not supported by substantial evidence. Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's decision is reversed, and the case is remanded for calculation and payment of SSI benefits. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: September 8, 2017
Rochester, New York

---

for SSI which was filed on May 26, 2011, and is payable as of that month. (Id.).